UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLEAN WASTE, INC.

            Plaintiff

-against-

THE CONNECTICUT INDEMNITY COMPANY, INC., FIRST NATIONS FINANCIAL SERVICES, INC., THE DUNLAP CORPORATION F/D/B/A DUNLAP INSURANCE & BONDING and/or DUNLAP CT CORPORATION, BRUEN DELDIN DiDIO ASSOCIATES, INC., and MARINE MGA, INC.

            Defendants

CIVIL ACTION NO.

3:02cv02105 (RNC)

June 29, 2007

## DEFENDANT THE DUNLAP CORPORATION f/d/b/a DUNLAP INSURANCE & BONDING and/or DUNLAP CT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

Pursuant to Local Rule 7(a), the defendant THE DUNLAP CORPORATION f/d/b/a DUNLAP INSURANCE & BONDING and/or DUNLAP CT CORPORATION ("Dunlap") hereby submits the following Memorandum of Law in support of its motion for summary judgment.

### I. PRELIMINARY STATEMENT & BACKGROUND[1]

As this Court is aware, the facts and circumstances of the instant action mirror a companion declaratory judgment action tried before this Court two years earlier. That declaratory judgment action, Connecticut Indemnity Company v. Frank Perrotti, Jr., 390

---

[1] For the sake of brevity, the undersigned has referenced various facts without citation in this Memorandum of Law. All factual references are cited in the movant's Local Rule 56(a)1 Statement, which has been filed in conjunction with the motion and this memorandum. Affidavits in support of this motion are further attached to the movant's Local Rule 56(a)1 Statement.

F.Supp.2d 158 (Conn. 2005), was decided by this Court on September 20, 2005. The decision provides a detailed account of the factual background of this matter which will not be repeated herein at length.

The plaintiff in this action, Clean Waste, Inc. is a Cayman Island corporation with a principal business address of One Capital Place, Sheden Road, Georgetown, Cayman Island, B.W.I. Frank Perrotti, Jr. is sole shareholder, sole director and president of Clean Waste, Inc.

In the summer of 1999, Mr. Perrotti hired William Taylor of Sterling Yachts, Inc. to help locate and acquire a yacht for Mr. Perrotti's personal use. Sterling Yachts is/was a yacht management company. Acting upon this request, Mr. Taylor found a 121 foot motor yacht which was located at a marina in Newport, Rhode Island. Mr. Perrotti agreed to buy the vessel for $3 million, subject to a pre-purchase survey of the vessel's condition and value. A pre-purchase survey of the vessel was performed by a marine surveyor, Joseph W. Lombardi.

Mr. Perrotti wanted to get insurance coverage for the vessel in time for the planned closing on the vessel. In or about September 1999, Mr. Perrotti requested that Mr. Taylor, who represented the interests of Clean Waste and Frank Perrotti Jr. in connection with the purchase of this vessel, take those steps necessary to obtain marine insurance for the purchase of this vessel. Mr. Perrotti told Mr. Taylor to contact Jay Lorinsky of First Nations Financial Services, Inc. Mr. Lorinsky was an insurance broker who had handled insurance matters for Mr. Perrotti in the past.

In conjunction with this request, Mr. Taylor provided Mr. Lorinsky with copy the yacht

survey prepared by Mr. Lombard as well as a letter outlining Mr. Perrotti's plans for the yacht. The yacht was purchased in the name of Clean Waste, Inc., which became the registered owner. Mr. Perrotti paid the purchase price for the yacht with his own personal funds.

In early October 1999, Mr. Lorinsky contacted Scott Hainey, an insurance producer employed by Dunlap[2]. Mr. Lorinsky advised Mr. Hainey about Mr. Perrotti's new yacht and asked if Mr. Hainey could place coverage. Accordingly, an application for insurance was submitted by Mr. Hainey to the defendant Marine MGA, Inc., which listed Mr. Perrotti as the "Applicant."

On October 14, 1999, Marine MGA, Inc. provided a quotation for the insurance coverage for the yacht. Coverage for Mr. Perrotti's yacht was bound by Marine MGA, Inc. on October 26, 1999, with an effective date of October 19, 1999, pursuant to a facsimile transmission from Mr. John Sterling at Marine, MGA, Inc. to Dunlap. The insurance for the yacht was provided by the defendant The Connecticut Indemnity Company ("CIC").

In May 2001, Mr. Perrotti was made aware of a claim for compensation by Johan Fourie, the yacht's former chief engineer. Mr. Fourie claimed to have slipped and fell on the vessel in April 2000 while engaged in the performance of his duties. The accident had occurred in April 2000 in Newport, Rhode Island, while the vessel was being re-fueled.

---

[2] Dunlap's Connecticut operations were sold to the defendant Bruen Deldin Didio Associates, Inc. ("BDD"), and Mr. Hainey thereafter became employed by BDD, effective January 1, 2000. Along with Mr. Hainey, the Perrotti account went to BDD and BDD became responsible for overseeing the account from January 1, 2000 onward. Thus, after the procurement of the initial policy, Dunlap had no involvement at all with Mr. Perrotti's yacht policy.

In July 2001, CIC advised Mr. Perrotti that the marine insurance policy was being rescinded because of misrepresentations in the application. Mr. Fourie filed suit in the United States District Court for the Southern District of Florida against the vessel (in rem ), Clean Waste, Inc., and Mr. Perrotti. Mr. Perrotti, through counsel, demanded that CIC provide Mr. Perrotti with a defense of the Fourie action but CIC refused.

In January 2003, the Fourie action settled before trial based on a consent judgment. In connection with its defense of the Fourie action, Mr. Perrotti and Clean Waste incurred $152,135.58 in legal expenses.

CIC brought a declaratory judgment action against Mr. Perrotti in the United States District Court for the District of Connecticut, Case No. 3:01-CV-1410(RNC). In its complaint, CIC sought a declaration that the marine insurance policy issued to Mr. Perrotti was void because the application for the policy contained misrepresentations concerning the yacht's ownership and home port.

On September 5, 2005, this Court found that the yacht policy issued by CIC was enforceable, and that CIC was not entitled to rescind the policy based upon the doctrine of uberrimae fidei. The Court found that certain incorrect information on the plaintiff's application for insurance concerning the yacht's ownership and home port did not amount to affirmative misrepresentations warranting recission of the policy. The information provided was more akin to innocent misrepresentations, which do not provide adequate grounds for rescission.

Having held the policy was enforceable, the Court also found that CIC breached the insurance policy by failing to defend its insured, Mr. Perrotti, in the Jones Act case brought by Mr. Fourie. As part of the judgment, the Court found that Mr. Perrotti was entitled to recover the attorneys' fees and costs he paid Holland & Knight in connection with their defense of the action, or $152,135.58.

The Court also found that Mr. Perrotti sustained his burden of showing that the amount of the settlement in the Fourie action ($600,000) was reasonable, but found that Mr. Perrotti was only entitled to a partial reimbursement of this indemnity payment from CIC. Specifically, the Court found Mr. Perrotti was entitled to recover from CIC one-third of the stipulated judgment of $600,000, or $200,000. This amount reflects the size of Fourie's potential recovery in the Jones Act case and the Court's opinion as to the degree of probability that Mr. Perrotti could have been held liable in that case in his personal capacity.

Based upon the Court's decision and findings of fact in the underlying declaratory judgement action, the sole issue in dispute with respect to the instant action concerns the proper insured under the policy. After all, had the insured on the policy been designated as Clean Waste, Inc., CIC would clearly have been responsible for the entire settlement in the Fourie action. No appeal was taken of the Court's judgment.

## II.    LAW & ARGUMENT

### A.    Standard for Summary Judgment

In a motion for summary judgment, the burden is on the moving party to establish that

there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed. R. Civ. P.; White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....'" Miner v. City of Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. School Dist., 963 F.2d 520, 523 (2d Cir. 1992) (citation omitted).

Where a motion for summary judgment is supported by documentary evidence and sworn affidavits, the opposing party must present significant probative evidence to create a genuine issue of material fact. Victoria v. O'Neill, 688 F.Supp. 84 (D.Conn.1988). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987).

### B. Plaintiff's Claim Against Dunlap is Barred by the Statute of Limitations

It is undisputed that the insurance coverage at issue was obtained in October 1999. Coverage for Mr. Perrotti was bound by Marine MGA, Inc. on October 26, 1999, with an effective date of October 19, 1999, pursuant to a facsimile transmission from Mr. John Sterling at Marine, MGA, Inc. to Dunlap. Therefore, any negligence on the part of Dunlap in failing to have the proper entity named as an insured on the CIC policy occurred at that time.

Connecticut General Statutes §52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan & King, P.C., 32 Conn.App. 786, 790, 631 A.2d 340, *cert. denied*, 228 Conn. 903 (1993). "In conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Collum v. Chapin, 40 Conn.App. 449, 451, 671 A.2d 1329 (1996). The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff firstdiscovers an injury. Fichera v. Mine Hill Corp., 207 Conn. 204, 212-13, 541 A.2d 472 (1988).

As indicated above, coverage for the yacht was bound on October 26, 1999. Thus, the limitations period for commencing a negligence action against Dunlap for its alleged failure to have the proper party named as an insured under the yacht policy terminated on October 26, 2002. As a matter of law, "[o]nce . . . insurance is procured, the agency relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so." Lewis v. Michigan Mutual Ins. Co., 154 Conn. 660, 664, 228 A.2d 803 (1967). The Complaint in this action was filed on November 21, 2002, almost one month after the statute

-7-

had expired. Accordingly, plaintiff's negligence claim against Dunlap is barred by the statute of limitations, and Dunlap is entitled to judgment as a matter of law.

### C. Plaintiff's Contributory Negligence Bars Its Negligence Claim against Dunlap

In Connecticut Indemnity Company v. Frank Perrotti, Jr., this Court found the following facts relative to Mr. Perrotti's review and signature on the application for insurance:

> To keep the coverage, Perrotti was required to sign the application form in the space provided for the "Applicant's Signature," thereby verifying that the information previously provided by Hainey was correct. [First Nations]'s office forwarded the completed application form to Perrotti for this purpose. Perrotti signed the application form after reviewing its contents, which he found to be accurate. He erroneously assumed that he would be a named insured along with Clean Waste, Inc.

Connecticut Indemnity Company, 390 F.Supp.2d at 163-164.

Under Connecticut law, an insured is under a duty to know the contents of insurance application signed by the insured, and failure to do so is inexcusable negligence. *See*, Kelly v. John Hancock Mutual Life Ins. Co.,131 Conn. 106, 110, 38 A.2d 176 (1944); *see also*, Harmon v. All American Life Ins. Co., Superior Court, judicial district of Ansonia-Milford, Docket No. CV030826525, 2005 WL 288765, 5-CBAR-0042 (January 11, 2005, Moran, J.)(rejecting insured's argument that she did not know the application for life insurance contained language that required good health at the time the premium was paid); *see also*, Pinette v. Assurance Co. of America, 52 F.3d 407 (2d Cir. 1995). Connecticut is one of the "authorities in those [which] impose upon an applicant for insurance the duty to inform themself of the contents of the application signed by him, under penalty of being bound by the representations as recorded

therein." G. Couch, Encyclopedia of Insurance Law Section 35-231 (2d ed. 1985). This rule in the insurance context is consistent with Connecticut contract law, which holds that, absent fraud, unfair dealing, or mistake, a party is not allowed to escape contractual liability by claiming he did not read specific provisions in a contract. Better Building Materials Co. v. Kirschner, 142 Conn. 1, 7, 110 A.2d 464 (1954). If an insured does not understand an application after reading it, it is his duty to inquire before signing it. *See*, Harmon v. All American Life Ins. Co., *supra*. Here, it is clear that Mr. Perrotti was negligent in signing the application which admittedly failed to list Clean Waste as an insured, even if he erroneously assumed that he would be a named insured along with Clean Waste. This negligence was a substantial factor in producing the damages in this case.

Here, plaintiff seeks recovery against Dunlap for a purely commercial loss, i.e., the benefit of insurance coverage which plaintiff claims was improperly procured by Dunlap. Therefore, the principles of comparative negligence embodied in C.G.S. §52-572h(b)[3] do not apply.

---

[3] C.G.S.§52-572h(b) states, in pertinent part:

(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative **to recover damages resulting from personal injury, wrongful death or damage to property** if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section. (emphasis added)

In Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 581, 657 A.2d 212 (1995), the Connecticut Supreme Court held that, for purposes of the comparative negligence statute, C.G.S. § 52-572h, "property damage" does not include purely commercial losses, unaccompanied by damages to or loss of use of some tangible property. However, in reviewing the statutory history behind the comparative negligence statute, the Court held:

> It would be consistent with that goal for the doctrine of comparative negligence, which by statute applies to actions based on negligence resulting in damage to person or property, also to apply to the tort of negligent misrepresentation resulting in commercial loss. Furthermore, it would undermine the legislative purpose of § 52-572h(b) if we were to require a plaintiff to be free from contributory negligence as a prerequisite to recovery under a theory of negligent misrepresentation merely because the damages sought were commercial losses rather than property damage. The doctrine of contributory negligence should not, therefore, consistent with our entire body of law, both statutory and common, act as an absolute bar to recovery for plaintiffs seeking recovery for negligent misrepresentation.

Williams Ford, Inc. v. Hartford Courant Co., *supra*, 232 Conn. at 586. The Court made this pronouncement despite the fact that the statute was in derogation of the common law and, as such, required a strict construction. Id at 581.

In Bhinder v. Sun Co., 246 Conn. 223, 242, 717 A.2d 202 (1998), the Connecticut Supreme Court further expanded the scope of C.G.S. §52-572h by holding,, as a matter of common law, that a negligent defendant may apportion liability to an intentional defendant. In so doing, the Court noted that "precluding the defendant from allocating fault is inconsistent with the principle of comparative negligence that a defendant should be liable only for that proportion of the damages for which he or she was responsible." Id., at 238. Quoting Williams

-10-

Ford, the Bhinder court stated that:

> Where possible, courts should, as a matter of common law adjudication, assure that the body of the law--both common and statutory--remains coherent and consistent.... It is consistent with the principles of apportionment to permit the allocation of fault in a negligence action between a negligent and an intentional tortfeasor.

(Internal quotations and citation omitted) Bhinder v. Sun Co., supra, 246 Conn. at 242-43.

In response to the Connecticut Supreme Court's decision in Bhinder, the legislature amended § 52-572h by prohibiting the apportionment of liability between allegedly negligent tortfeasors and intentional or reckless tortfeasors, among others. *See*, Public Acts 1999, No. 99-69, § 1 (P.A. 99- 69). As stated by the Connecticut Supreme Court in Eskin v. Castiglia, 253 Conn. 516 (2000):

> Although P.A. 99-69, § 1, did not purport to eliminate the policy behind apportionment, this amendment to § 52-572h suggests that the policy behind apportionment is limited by the specific statutory provisions governing its application.

The Bhinder decision, coupled with the legislature's response, calls into question whether comparative negligence for commercial losses, as espoused by the Court in Williams Ford, is still viable. Logically, it follows that negligence cases claiming purely commercial losses do not fit within the confines of C.G.S. §52-572h(b) and, therefore, in the absence of a statutory provision in derogation of the common law, the principle that contributory negligence bars recovery is applicable in this case, which seeks a purely commercial loss..

The case law and Connecticut statutes demonstrate that when a claim is based solely on

a pure economic loss, the plaintiff cannot be negligent itself or it will be barred from pursuing its negligence claim against another under the common-law doctrine of contributory negligence. Here, the plaintiff admittedly reviewed the application and found it to be correct, erroneously assuming that Clean Waste was a named insured on the policy. Thus, this Court has no choice here but to dismiss the claim against Dunlap based on plaintiff's own contributory negligence.

## III. CONCLUSION

WHEREFORE, for all the reasons stated herein, the movant is entitled to summary judgment on the Second Count of the Complaint because plaintiff's negligence claim against Dunlap is barred by the statute of limitations. Alternatively, plaintiff's action against Dunlap is equally barred by plaintiff's contributory negligence.

Respectfully submitted,

THE DEFENDANT,
THE DUNLAP CORPORATION f/d/b/a
DUNLAP INSURANCE & BONDING and/or
DUNLAP CT CORPORATION

By: _____
Darren P. Renner, Esq. (ct 15901)
Christopher B. Weldon, Esq. (ct 14128)
James C. Keidel, Esq. (ct 19970)
Robert J. Grande, Esq. (ct 21763)
Lustig & Brown, LLP
1177 Summer Street
Stamford, Connecticut 06905
Telephone: (203) 977-7840
Fax No. (203) 977-8649

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEAN WASTE, INC. | |
| Plaintiff | CIVIL ACTION NO. |
| -against- | 3:02cv02105 (RNC) |
| THE CONNECTICUT INDEMNITY COMPANY, INC., FIRST NATIONS FINANCIAL SERVICES, INC., THE DUNLAP CORPORATION F/D/B/A DUNLAP INSURANCE & BONDING and/or DUNLAP CT CORPORATION, BRUEN DELDIN DiDIO ASSOCIATES, INC., and MARINE MGA, INC. | |
| | June 29, 2007 |
| Defendants | |

## CERTIFICATION

I hereby certify that on June 29, 2007, a copy of foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** of the defendant **THE DUNLAP CORPORATION f/d/b/a DUNLAP INSURANCE & BONDING and/or DUNLAP CT CORPORATION** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                    THE DEFENDANT,
                                    THE DUNLAP CORPORATION f/d/b/a DUNLAP INSURANCE & BONDING and/or DUNLAP CT CORPORATION

By: _____
     Robert J. Grande, Esq. (ct 21763)
     Lustig & Brown, LLP
     1177 Summer Street
     Stamford, Connecticut 06905
     Telephone: (203) 977-7840
     Fax No. (203) 977-8649