1

## YACHT PURCHASE AND SALE AGREEMENT

### September 7, 1999

This is an Agreement (the "Agreement") made by and between **Clean Waste, Inc.** a Cayman Corporation with offices at PO Box 1034, One Capital Place, Grand Cayman, Cayman Islands, B.W.I. (the "BUYER") and **Sun Boat, Inc.** PO Box 268, Georgetown, Grand Cayman, Cayman Islands, B.W.I.(the "SELLER"), of the Cayman flag 1986 121' Denison Cockpit Motoryacht described in the attached inventory(As provided by the Listing Broker.) which is made a part hereof, and named, **"SUN CHASER"**, (the "YACHT"). The BUYER and the SELLER recognize, **Alpha Projects** (the "SELLING BROKER") and **Richard Bertram, Inc.** (the "LISTING BROKER") as the brokers handling the sale of the YACHT, and herein referred to as the "BROKERS".

1. **PRICE AND DEPOSIT**: The "selling price" shall be, **Three Million, dollars (U.S. $ 3,000,000.00\*(See** Section 6; Additional Provisions; Item # 4.) for which the BUYER agrees to buy and the SELLER agrees to sell the YACHT, subject to the terms and conditions set forth in this Agreement. The sum of **Two Hundred Thousand dollars, (U.S. $ 200,000.00 )** of the selling price shall be paid as a deposit (the "deposit") upon execution of this Agreement. The deposit shall be paid to and held by the SELLING BROKER, in escrow in accordance with paragraph #16 hereof (the "Escrow Fund") pending resolution of this sale. The balance of the SELLING PRICE shall be paid in certified or collected funds at the closing.

2. **SURVEY**: The BUYER may have the YACHT surveyed at his expense on or before **September 22, 1999** to verify the condition of the yacht and the accuracy of the attached inventory.
   a. The SELLER agrees that the Buyer or his agents may examine the YACHT and inventory in a nondestructive manner. The SELLER may stipulate at which boatyard he is willing to have the YACHT hauled for survey. The SELLER agrees that delivery to and from the boatyard for survey, which he hereby authorizes, is to be at the SELLER's sole risk and expense.
   b. The BUYER agrees that the surveyor(s) shall be employed by the BUYER, and that the BROKERS are not responsible for any errors, omissions or other inaccuracies that may appear on the survey of the YACHT, even though the BROKERS may have suggested the name of the surveyor, or at the BUYER's request, may have hired the surveyor on behalf of the buyer.

3. **ACCEPTANCE OF THE YACHT**: The BUYER shall notify the SELLING BROKER of his acceptance of the YACHT and inventory, or his rejection of the YACHT, in BUYER's sole discretion, **no later than five o'clock p.m. local time on September 29, 1999**. If said notice has not been timely received, the BUYER shall be deemed to have accepted the YACHT and inventory in its present condition, subject to terms, if any, of paragraph #6.

4. **TERMINATION OF AGREEMENT**: If the BUYER gives notice of his intention to reject the YACHT under the terms of this Agreement, such notice shall constitute termination of the BUYER's obligation to purchase and the SELLER's obligation to sell, and the BUYER and the SELLER both authorize the SELLING BROKER to return the deposit to the BUYER, after deducting any fees and charges incurred against the YACHT by the BUYER, or by the BROKERS on behalf of the BUYER, including the cost of the survey and related expenses, if said expenses have not been paid by the Buyer.

5. **CLOSING**: The "closing" on this sale shall take place on or before **October 6, 1999** at 3:00 o'clock P.M. local time, at a location physically outside of United States waters off the northeast coast of the United States. The closing on the sale shall be deemed complete when:
   a. All documents necessary to transfer good and absolute title to the YACHT have been received by the BUYER, or by the SELLING BROKER on behalf of the BUYER; and
   b. The balance of the SELLING PRICE is paid in certified or collected funds to the SELLER, or to the SELLING BROKER for transmittal to the SELLER.

6. **ADDITIONAL PROVISIONS** : 1. This transaction is contingent upon the BUYER's sole satisfaction with the results of a marine survey. **2.** This transaction is contingent upon the BUYER's sole satisfaction with the results of an engine inspection. **3.** This transaction is contingent upon the BUYER's sole satisfaction with the results of a Sea Trial. **4.** This transaction is contingent upon BUYER's sole satisfaction with a clear and definitive outline and his exact understanding of the responsibilities required to fulfill the outstanding, "Charity Charters" referenced in SELLER's letter and dated September 1, 1999. ( Attached.)

### OTHER RIGHTS, OBLIGATIONS AND MISCELLANEOUS PROVISIONS          RC 0028

7. The SELLER warrants and/or agrees as follows:
   a. That he has full power and legal authority to execute and perform this Agreement, that he has good and marketable title to the YACHT, and that he will obtain permission from any authority to sell the YACHT, if necessary.
   b. That the YACHT will be sold free and clear of any mortgages, liens, bills, encumbrances, or claims whatsoever. If any such obligations remain outstanding at the closing, the SELLER authorizes the SELLING BROKER to deduct the funds necessary to satisfy such obligations from the proceeds of the sale.

   c. To deliver the YACHT and its inventory as accepted in paragraph #3, on or before October 6, 1999 in a location physically outside of United States waters off the northeast coast of the United States.

   d. To pay any and all duties, taxes, fees, or other charges assessed against the YACHT by any governmental authority prior to the closing, to hold harmless and indemnify the BUYER and BROKERS against any claims or actions for such fees in future, and to provide validation of such payments at the closing or, upon written request by the BUYER, ten days prior to closing.

   e. To hold harmless and defend the BUYER and BROKERS against any and all claims incurred prior to closing that may impair or adversely affect the BUYER's receipt, use and possession of the YACHT including good and absolute title thereto; and to assume all costs incident to defending BUYERS and BROKERS against such claims, including their reasonable attorney's fees.

   f. To pay the BROKERS the commission as soon as the sale is consummated, and authorizes the BROKERS to deduct the commission from payments received directly or indirectly for the BUYER. Such commission shall be calculated as 10%(Ten percent) of the final selling price of the YACHT. Should the sale not be consummated for any reason, and the SELLER transfers any interest in the YACHT to the BUYER, directly or indirectly, within two years of the closing date of the Agreement (except a charter of one month or less); then the SELLER agrees to pay the BROKERS an amount equal to the commission which would have applied to the sale for which this Agreement now created.

8. The BUYER warrants and/or agrees as follows:

   a. That he has full power and legal authority to execute and perform this Agreement, and to obtain the permission of any authority to deliver the YACHT, if required.

   b. To deliver the following at the closing:

     1. Certified or collected funds payable to the SELLER, or for the SELLER's account, in an amount equal to the balance of the selling price as set forth in Paragraph #1.

     2. Certified or collected funds payable to the BROKERS, in an amount equal to any charges incurred against the YACHT by the BROKERS on behalf of the BUYER, including costs related to the survey of the YACHT.

     3. Any and all documents, including authorization, required to complete this purchase.

   c. To pay all sales and/or use taxes, now or hereafter, imposed as a result of this sale, to indemnify the SELLER and BROKERS against any obligations to pay such taxes, and to furnish proof of such payments upon request by the BROKERS.

   d. The BUYER will have the right of possession of the YACHT only upon completion of the closing.

9. **INTERIM RESPONSIBILITIES:** The SELLER shall bear all risk of loss or damage to the YACHT, or to any person or property on said YACHT until closing. Any damages to the YACHT subsequent to acceptance as set forth in paragraph #3, and prior to completion of closing, shall be repaired by the SELLER at his expense, subject to approval of the BUYER, who has the right to request a reasonable price adjustment or to cancel the sale if substantial damages cannot be repaired to his satisfaction.

10. **DEFAULT BY SELLER:** SELLER's failure to deliver the YACHT to the BUYER or otherwise to perform the terms of the Agreement, due to any reason (including loss of or substantial damage to the YACHT caused by the SELLER's negligence which prevents completion of this sale), shall obligate the SELLER to pay all costs and charges incurred in connection with any survey undertaken on behalf of the BUYER, and to pay the BROKERS the full brokerage commission which would have otherwise been due pursuant to paragraph #7. SELLER's obligation is without prejudice to any other rights the BUYER might also have as a result of SELLER's default. However, if the sale cannot be completed by the closing date, due to substantial damage to the YACHT not caused by the SELLER's negligence, the SELLING BROKER is authorized to deduct from the deposit any fees or charges incurred against the YACHT by the BUYER, including the cost of the survey and related expenses, and return the balance to BUYER within ten business days. In the event the SELLER fails to deliver the YACHT to the BUYER and the SELLER sells the YACHT to a third party for a higher price than the selling price hereunder, Seller shall pay Buyer, as liquidated damages, the difference between the actual selling price for the yacht and the selling price set forth in this Agreement.

11. **DEFAULT BY BUYER:** The BUYER and SELLER agree that the amount of damages sustainable in the event of a default by the BUYER are not capable of ascertainment. Therefore, in the event that the BUYER, after accepting the YACHT under the terms of this Agreement, fails to fulfill any or all the obligations set forth in paragraph #8, Two Hundred Thousand Dollars ($ 200,000.00) shall be retained by the SELLER as liquidated and agreed damages and the BUYER and SELLER shall be relieved of all obligations under the Agreement. This sum shall be divided equally (50%/50%) between the SELLER and the BROKERS after all expenses incurred against the YACHT by the BUYER have been paid. The BROKERS' share shall not exceed the amount the BROKERS would have received had the sale been completed.

Page 3 of 3.

12.. JURISDICTION: The SELLER and the BUYER each hereby consents to service of process, and to be sued, in the State of Connecticut and consents to the jurisdiction of the courts of the State of Connecticut and the United States District Court for the District of Connecticut, as well as to the jurisdiction of all courts from which an appeal may be taken from such courts, for the purpose of any suit, action or other proceeding arising hereunder or with respect to the transactions contemplated hereby, and expressly waives any and all objections that either the SELLER or the BUYER may have to venue in any such courts

13. Should the LISTING BROKER or the SELLING BROKER become party to any litigation involving this Agreement and found not to be at fault, it is agreed that the BROKER(S) shall be reimbursed for costs and attorney's fees by the party(s) found to be at fault.

14. This Agreement shall:

a. be construed and interpreted in accordance with, the substantive and procedural law of the State of Connecticut and Federal maritime law;

b. constitute the entire Agreement between the BUYER and SELLER, and supersedes all prior discussions, agreements and understandings of any nature between them, and may not be changed or added to except by agreement in writing and signed by the parties to be bound;

c. be binding upon and shall inure to the benefit of and be enforceable by the successors in interest of the BUYER and SELLER, including but not limited to heirs, executors, administrators or assigns;

d. survive the closing of the transaction, and shall not be merged in or otherwise be affected by the execution, tender, delivery or acceptance of the Bill of Sale or any other documents executed or delivered at the closing.

15. THE BUYER EXPRESSLY AGREES THAT NO WARRANTIES OR REPRESENTATIONS, EXPRESS OR IMPLIED HAVE BEEN OR WILL BE MADE DIRECTLY OR INDIRECTLY, BY THE SELLER OR BROKERS, CONCERNING THE CONDITION OR USE OF THE YACHT. THE BUYER FURTHER EXPRESSLY AGREES THAT HE HAS NOT RELIED UPON ANY ORAL REPRESENTATION BY THE SELLER OR THE BROKERS AS TO THE CONDITION OR CAPABILITY OF THE YACHT OR ITS INVENTORY. THE BUYER ALSO RECOGNIZES AND ACKNOWLEDGES THAT YACHT AND ITS INVENTORY MAY HAVE BOTH APPARENT AND/OR HIDDEN DEFECTS AND BUYER ACCEPTS RESPONSIBILITY FOR DETERMINING THE CONDITION OF YACHT, ITS INVENTORY AND EXISTENCE OF DEFECTS.

16. ESCROW FUND: The escrow created hereunder shall terminate on the first to occur of (I) the date of the closing, or (II) the date on which the BUYER terminates the Agreement in accordance with its provisions, or (III) the date on which either the SELLER or the BUYER defaults in accordance with either Paragraph 10 or 11 respectively, of this Agreement. Prior to distributing the Fund, the SELLING BROKER shall determine to whom the Escrow Fund shall be disbursed and how much of such fund shall be disbursed to the persons entitled to any portion thereof, all in accordance with the provisions of this Agreement.

In the event the SELLING BROKER, acting as the agent for the Escrow Fund, is unable to determine how the Escrow Fund should be disbursed in accordance with this Agreement, the SELLING BROKER shall give prompt notice of such difficulty to SELLER and BUYER. If SELLER and BUYER are unable to resolve the difficulty within thirty (30) days after the date of such notice, the SELLING BROKER shall have the absolute right at its election to do either of the following:

a. Withhold and stop all further proceedings with respect to, and the performance of, this Agreement and retain the Escrow Fund until it has received written instructions signed by both the BUYER and SELLER authorizing and directing the distribution of the Escrow Fund; or .

b. File a suit in interpleader and obtain an order from the court requiring the parties to litigate their several claims and rights among themselves. In the event such interpleader suit is brought, the SELLING BROKER shall be fully released from any obligation to perform any further duties imposed upon it hereunder, and SELLER and BUYER shall pay the SELLING BROKER all costs, expenses and reasonable attorneys' fees expended or incurred by the SELLING BROKER.                                RC 0030

In Witness Whereof, the BUYER and SELLER have hereunto placed their signatures as of the date written below.

WITNESS: _F. William Taylor_     Clean Waste, Inc.     BUYER: by _Gregory J. Ligelis_     Date: _Oct 5 1999_
F. William Taylor                 Frank Perrotti, Jr. / GREGORY J. LIGELIS
                                  ATTORNEY-IN-FACT

WITNESS: _Linda M. Dunn_          Sun Boat, Inc.        SELLER: _Stephen F. Renneckar_    Date: _Oct 4 1999_
Ann Benjamin LINDA DUNN           Stephen F. Renneckar