**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CLEAN WAVE, INC.** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| Plaintiff | ) | **3:02 CV 2105 (RNC)** |
| | ) | |
| vs. | ) | |
| | ) | |
| **THE CONNECTICUT INDEMNITY CO., et al.** | ) ) | |
| | ) | |
| Defendants | ) | **JULY 2, 2007** |

## DEFENDANT BRUEN DELDIN DIDIO ASSOCIATES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the Defendant Bruen Deldin Didio Associates, Inc. ("BDD") seeks summary judgment against the Plaintiff Clean Waste, Inc. ("Clean Waste") as to all of the claims set forth against BDD in Clean Waste's Complaint, dated November 1, 2002.

### I.   FACTUAL BACKGROUND

The following factual statement is presented by way of background. These facts are drawn primarily from the Court's Ruling and Order (the "Order"), dated September 30, 2005, in the related case of <u>Connecticut Indemnity Co. v. Perrotti</u>, Case No. 3:01-CV-1410 (RNC), attached hereto as Exhibit A. Any factual representations from sources outside of the Order, which are material to this motion for summary judgment, are attributed to their source.

In the summer of 1999, Frank Perrotti, Jr. ("Perrotti") hired William Taylor of Sterling Yachts, Inc. ("Taylor") to help him locate and acquire a yacht for his personal use." Perrotti told Taylor to contact Jay Lorinsky ("Lorinsky") of the Defendant First

Nations Financial Services, Inc. to obtain insurance coverage for the yacht.  On October 5, 1999, a yacht was purchased in the name of Clean Waste, Inc., which became the registered owner (the "Yacht").  Through Liberty Mutual, Lorinsky had obtained temporary coverage for the Yacht, thus enabling the closing to take place as planned.  Liberty Mutual did not want to continue to insure the vessel so its internal brokerage department attempted to secure insurance elsewhere.

Cigna Corporation Group issued two quotes; however, Perrotti thought coverage could be found for a lower premium, so Lorinsky was asked to get other quotes. Lorinsky contacted Scott Hainey, an employee of the Defendant The Dunlap Connecticut Corp. ("Dunlap").  On October 26, 1999, coverage for the Yacht was bound by Marine MGA, Inc., with an effective date of October 19, 1999 (the "Policy").  Affidavit of Scott Hainey, dated June 21, 2007, and submitted in support of the Motion for Summary Judgment filed by Dunlap, dated June 29, 2007 (the "Dunlap Affidavit") at ¶ 8.  A copy of the Dunlap Affidavit is attached hereto as Exhibit B.

Pursuant to a Purchase and Sale Agreement, dated December 31, 1999, (the "P&S") BDD purchased substantially all of the assets of the Defendants, The Dunlap Connecticut Corp., relating to or associated with its insurance agency business.  Affidavit of Scott Hainey, dated June 21, 2007 (the "Hainey Affidavit") at ¶ 3.  A copy of the Hainey Affidavit is attached hereto as Exhibit C.  BDD assumed none of Dunlap's liabilities under the P&S. Id.  From 1998 until December 31, 1999, Hainey was employed by Dunlap.  Hainey Affidavit at ¶ 4.  From January 1, 2000 until the present, Hainey has been employed by BDD.  Id.  From January 1, 2000 until at least August, 2000, BDD had

no involvement with, and was unaware of any new information relating to the "Policy". Id. at 5.

Johan Fourie sustained injuries in a fall on board the Yacht in April, 2000 (the "Fourie Loss"). Donald R. Roberts, a claims consultant for the Defendant the Connecticut Indemnity Co. ("CIC") received notice of the Fourie Loss in May, 2001. March 31, 2004 Deposition Testimony by Donald Roberts[1] ("Roberts Dep. Tr.") at 24-26 and Dep. Exh. 9. In July of 2001, Roberts sent a letter to Perrotti on behalf of CIC, notifying Perrotti that the Policy was rescinded. Roberts Dep. Tr. at 26, 29-30 and Dep. Exh. 13. Mr. Fourie filed suit in the United States District Court for the Southern District of Florida against the Yacht (*in rem*), Clean Waste, Inc. and Perrotti (the "Fourie Case"). Through his legal counsel, Perrotti demanded that CIC provide him with a defense of the Fourie Case, but CIC declined. In January 2003, the Fourie Case settled based upon a consent judgment in the amount of $600,000.

## II.   LEGAL ARGUMENT

The standards which govern a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure are well-settled. A party's motion for summary judgment must be granted if the evidence produced by the parties shows that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

When considering whether there are any genuine issues of material fact, all inferences and all ambiguities must be resolved against the moving party. Hanson v.

---

[1] Relevant excerpts from the Roberts deposition transcript and deposition exhibits are attached hereto as Exhibit D.

McCaw Cellular Communications, Inc., 77 F. 3d 663, 667 (2d Cir. 1996).  However, the motion for summary judgment may not be denied simply because a factual issue exists.  Instead, the motion can be denied only if there is a genuine issue as to a fact that "might affect the outcome of the suit under the governing law…".  Anderson v. Liberty Lobby, Inc., 477 U.S., at 248, 106 S. Ct. at 2510; Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11-12 (2d Cir. 1986).

The moving party must show by sufficient admissible evidence that there are no genuine material issues of fact. The non-moving party must then show that there are genuine issues for trial, and cannot rely upon "mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful".  D'Amico v. City of New York, 132 F. 3d 145, 149 (2d Cir. 1998).

### A.  **BDD's Conduct Could Not Have Caused Clean Waste's Damages**.

In the Third Count of the Complaint, Clean Waste incorporates its allegations against Dunlap and reasserts those allegations against BDD.  The allegations against BDD may be categorized as:  (1) relating to conduct during the process of procuring the Policy, which was concluded before December 31, 1999; and (2) relating to conduct during the process of renewing the Policy, which began after the Fourie Loss in April, 2000.

#### 1.  **BDD Cannot Be Liable For Conduct That Pre-Dates The P&S.**

On December 31, 1999, BDD acquired some of Dunlap's assets and assumed none of its liabilities.  Hainey Affidavit at ¶ 3.  Accordingly, any claim of damage based upon conduct by Dunlap or its employees, which pre-date the P&S, necessarily must be

4

the sole responsibility of Dunlap. On October 26, 1999, the Policy was issued. Dunlap Affidavit at ¶ 8. Thus, Clean Waste's allegations of liability by BDD premised upon conduct by Dunlap, or any Dunlap employee, including Mr. Hainey, during the process of procuring the Policy must fail. There is no genuine issue as to any material fact arising prior to December 31, 1999 which could create liability for BDD, and BDD is entitled to judgment as a matter of law as to ¶¶ 68, 69(a), (b), (c), (d) and (e) of the Third Count of the Complaint.

### 2. BDD Cannot Be Liable For Conduct That Post-Dates The Fourie Loss.

Clean Waste makes no allegation of damage based upon conduct by BDD before the Fourie Loss, which occurred in April, 2000. Instead, each remaining allegation by Clean Waste asserts damages based upon conduct by BDD during the renewal process of the Policy later that year. Because BDD's conduct during the renewal process is causally irrelevant to Clean Waste's damage claim, it is entitled to judgment as a matter of law as to the remaining paragraphs of the Third Count of the Complaint (¶¶69 (a), (f), (g), (h) and (i)).

In July 2001, CIC claimed to rescind the Policy after discovering three alleged misrepresentations (the "Application Errors") made at the time the Policy was initially obtained relating to (1) the named owner of the Yacht; (2) the Yacht's navigational area; and (3) the Yacht's homeport. See Roberts Dep. Exhibit. 13, attached at Exhibit D. Thus, after learning that there may have been errors made during the application process, rather than modify or amend, CIC *rescinded the Policy*. In fact, when the rescission was challenged by Perrotti and Clean Waste, Inc., CIC initiated legal action against Perrotti,

seeking a declaratory judgment stating that the Policy was unenforceable. See Connecticut Indemnity Co. v. Perrotti, Case No. 3:01-CV-1410 (RNC).

Despite these undisputable facts, the second component of Clean Waste's claim against BDD asserts, essentially, that during the renewal process occurring from August to October, 2000, BDD should have discovered the Application Errors and somehow corrected the Policy, thus providing coverage in the name of Clean Waste for the Fourie Loss. Even assuming, *arguendo*, that BDD either discovered, or should have discovered, the Application Errors during the renewal process, BDD could not have corrected the terms of coverage for a loss that had already occurred. Any correction by BDD, in the form of a modified insurance policy, would have been prospectively effective. Moreover, upon identifying the Application Errors, CIC did not, in fact, modify the Policy, either retroactively, or even prospectively. To the contrary, CIC rescinded the Policy. Once the Application Errors were made, there was *nothing BDD could have done* to correct the Policy.

Thus, after the Fourie Loss, BDD necessarily could not have corrected the damages incurred by Clean Waste as a result of alleged errors made when the Policy was issued in 1999. Accordingly, there is no genuine issue as to any material fact arising after the Fourie Loss, which could create liability for BDD, and BDD is entitled to judgment as a matter of law as to ¶¶ 69 (a), (f), (g), (h) and (i) of the Third Count of the Complaint.

### III. CONCLUSION

Based upon the foregoing, BDD seeks summary judgment, pursuant to Fed. R. Civ. P. 56, as to the claims against BDD, which are set forth in Clean Waste's Complaint.

**THE DEFENDANT,
BRUEN DELDIN DIDIO ASSOCIATES, INC.**

By: /s/ Mary E.R. Bartholic
Mary E.R. Bartholic (ct 17518)
Cohn Birnbaum & Shea P.C.
100 Pearl Street
Hartford, CT 06103
Telephone: (860) 493-2200
Fax: (860) 727-0361
mbartholic@cb-shea.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of July, 2007 a copy of the foregoing Defendant Bruen Deldin Didio Associates, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

   /s/ Mary E.R. Bartholic
Mary E.R. Bartholic

#138675/07765.001