EXHIBIT D

```
                                                                    1

 1              IN THE UNITED STATES DISTRICT COURT

 2                    DISTRICT OF CONNECTICUT

 3

    CLEAN WASTE, INC.                  :  CASE NO.
 4                                     :  3:02 CV 2105 (RNC)
    V.                                 :
 5                                     :
    THE CONNECTICUT INDEMNITY          :  MARCH 31, 2004
 6  COMPANY, FIRST NATIONS
    FINANCIAL SERVICES, INC., THE
 7  DUNLAP CORPORATION F/D/B/A
    DUNLAP INSURANCE & BONDING
 8  and/or DUNLAP CT CORPORATION,
    BRUEN DELDIN DIDIO ASSOCIATES,
 9  INC. and MARINE MGA, INC.

10                        * * * * *

11  THE CONNECTICUT INDEMNITY          :  CASE NO.
    COMPANY                            :  3:01 CV 1410 (RNC)
12
    V.
13
    FRANK PERROTTI, JR.
14
    ---------------------------------------------------------
15           DEPOSITION OF DONALD ROBERTS
    ---------------------------------------------------------
16  APPEARANCES:

17          SENNING & RIEDER
            THE ESSEX LAW GROUP, LLC
18              Attorneys for Clean Waste, Inc. and
                Frank Perrotti, Jr.
19              16 Saybrook Road
                Essex, Connecticut   06426
20              (860) 767-2618
            BY: JOHN L. SENNING, ESQ.
21
            DUANE MORRIS LLP
22              Attorneys for Connecticut Indemnity
                Company and Marine MGA, Inc.
23              744 Broad Street, Suite 1200
                Newark, New Jersey   07102-3889
24              (973) 424-2035
            BY: JAMES W. CARBIN, ESQ.
25
                  DONNA M. DECIANTIS, LSR
```

```
                                                                    2

 1  A P P E A R A N C E S :

 2          SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY &
            GREENBERG, P.C.
 3              Attorneys for First Nations Financial
                Services, Inc.
 4          2 Union Plaza, Suite 200, P.O. Box 1591
            New London, Connecticut   06320
 5          (860) 442-4416
        BY: FRANK J. LIBERTY, ESQ.
 6


 7      LUSTIG & BROWN, LLP
            Attorneys for Dunlap
 8          1150 Summer Street
            Stamford, Connecticut   06905
 9          (203) 977-7840
        BY: DARREN P. RENNER, ESQ.
10


11      COHN BIRNBAUM & SHEA
            Attorneys for Bruen Deldin DiDio
12          Associates, Inc.
            100 Pearl Street
13          Hartford, Connecticut   06103-4500
            (860) 493-2200
14      BY: MARY E.R. BARTHOLIC, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                              3

 1         Deposition of DONALD ROBERTS, taken on behalf of
 2    the defendants in the hereinbefore entitled action
 3    pursuant to the Federal Rule of Civil Procedure 30
 4    before Donna M. DeCiantis, duly qualified notary public
 5    in and for the State of Connecticut, held at the
 6    offices of Cohn Birnbaum & Shea, P.C., 100 Pearl
 7    Street, Hartford, Connecticut, commencing at 1:53 p.m.,
 8    Wednesday, March 31, 2004.
 9                    S T I P U L A T I O N S
10              It is hereby stipulated and agreed by and
11    among counsel for the respective parties that all
12    formalities in connection with the taking of this
13    deposition, including time, place, sufficiency of
14    notice, and the authority of the officer before whom it
15    is being taken, may be and are hereby waived.
16              It is further stipulated and agreed that
17    objections other than as to form are reserved to the
18    time of trial.
19              It is further stipulated and agreed that the
20    reading and signing of the deposition are not waived.
21              It is further stipulated that the proof of
22    the qualifications of the notary public before whom the
23    deposition is being taken are hereby waived.
24
25
```

4

```
 1                         I N D E X
 2   WITNESS
 3   DONALD ROBERTS
 4        Direct examination by Attorney Senning..........5
 5   ---------------------------------------------------------
 6                      INDEX OF EXHIBITS
                     (Marked for Identification)
 7   ROBERTS EXHIBITS
 8   1    Responses and Objections to Plaintiff's first
 9        Request for Production of Documents..............5
10   2    Documents Bates stamped CIC 000011-000013.......5
11   3    Document Bates stamped CIC 000007...............5
12   4    Documents Bates stamped MGA 000073-000077.......5
13   5    Documents Bates stamped CIC 000008-000011.......5
14   6    Documents Bates stamped CIC 000024-000025.......5
15   7    Document Bates stamped MGA 000080...............5
16   8    Documents Bates stamped CIC 000107-000115.......5
17   9    Document Bates stamped CIC 00122................5
18   10   Documents Bates stamped MGA 000059-000060 and
          MGA 000028-000056...............................5
19
     11   Document Bates stamped MGA 000057...............5
20
     12   Document Bates stamped MGA 000058...............5
21
     13   Documents Bates stamped CIC 000004-000006.......5
22
     14   Document Bates stamped BDD 0014.................5
23
     15   Document Bates stamped BDD 001315...............5
24
25
```

```
                   (Roberts Exhibits Nos. 1 through 15,
              which are indexed in the previous page,
              were marked for identification.)
```
J A Y  L O R I N S K Y ,
     first duly sworn by Donna M. DeCiantis,
     shorthand reporter and Notary Public within
     and for the State of Connecticut, was
     examined and testified as follows:

          (The deposition commenced at 1:17 p.m.)

               DIRECT EXAMINATION
BY ATTORNEY SENNING
     Q    Mr. Roberts, I met you off the record prior to the commencement of the deposition.
     A    Yes.
     Q    My name is John Senning.  I'm the attorney for the defendant Frank Perrotti in the first action and the attorney for the plaintiff Clean Waste, Inc. in the second action.  You've had your deposition taken before?
     A    Yes.
     Q    About how many times?
     A    Six or seven times.
     Q    You were present here when Attorney Carbin

1  by your company?
2     A    Yes.
3     Q    Would it have taken any length of time to
4  get to your attention?
5     A    Couple of days maybe.
6     Q    What happened next with respect to the
7  vessel NEWS in your involvement as a claims manager
8  regarding the insurance claim on Fourie?
9     A    After receipt of that document?
10    Q    Yes.
11    A    I don't know.  I don't know the time
12 sequence.
13    Q    The document I was looking for a few moments
14 ago, Exhibit No. 9, I'll ask you to take a look at that
15 and see if you could identify that, please.
16    A    Okay.
17    Q    The date of that memorandum is 5/31/2001; is
18 that correct?
19    A    Yes.
20    Q    And in it it states that, quote, I have just
21 received notice of a Jones Act Claim being made against
22 the insured for injuries sustained by a crewman.
23 Please review the insured and determine," and then you
24 sent a list of things you wanted to find out; is that
25 correct?

1    A    Correct.
2    Q    The date of this memo is 5/31/2001. The memo indicates at the bottom "date of accident" as April 8, 2000. After that it says "yes," parens, 2000 closed parens. The memo reflects the fact that this is the first that you had learned of this claim?
7    A    Yes.
8    Q    Is there any reason why it would take from April, if that was the date, to the end of May in 2001?
10            ATTORNEY CARBIN: Objection to the form.
12            ATTORNEY RENNER: When you refer to exhibits, could you also refer to the Bates numbers so we can follow?
15            ATTORNEY SENNING: Of course, of course.
17    A    Could you read back the question?
18            (Whereupon, the reporter read back the last question.)
20    A    Would you rephrase the question?
21    Q    Certainly. For the record I think we could all stipulate that the accident occurred in August of 2000, rather than April. There seems to have been some mistake.
25            ATTORNEY CARBIN: We don't know.

```
                                                              26
```

1           ATTORNEY SENNING:  You don't know, all
2   right.
3      Q    Based upon your memorandum, it says "date
4   DA," is that date of accident?
5      A    Yes.
6      Q    And the date is April 8, 2000, correct?
7      A    That's what it says.
8      Q    And your memo is dated 5/31/2001?
9      A    Yes.
10     Q    My question was, to your knowledge or do you
11  have any knowledge as to why it would take from April
12  8th, if in fact that was the date of the accident, to
13  May 31, 2001 to reach your desk?
14     A    The delay was in reporting it to us.
15     Q    By whom?
16     A    By his attorney, plaintiff's attorney.
17     Q    All right.  Do you have any knowledge of the
18  insured having filed a notice of loss document with CIC
19  or Marine MGA?
20     A    No.
21     Q    Ultimately CIC issued a rescission,
22  declination letter that you referred to previously,
23  correct?
24     A    Yes.
25     Q    And do you recall the date of that letter?

27

1     A    No.

2     Q    If I gave you the date of July 23, 2001,
3 would that refresh your recollection?

4     A    Not really. If you show me the letter, I
5 could tell you.

6     Q    This is Bates stamped CIC 4.

7         ATTORNEY RENNER: Through 6?

8         ATTORNEY LIBERTY: Through 6.

9     Q    I'm going to show you CIC 4 through 6 and
10 ask you to take a look at that.

11     A    Yes. It's July 23, 2001.

12     Q    Thank you.

13         ATTORNEY CARBIN: You marked a copy.

14         ATTORNEY SENNING: I know I marked a
15         copy. I also have a cold as Mr. Roberts, so
16         my vision is down to about 50 percent, so...

17     Q    So we're referring to Exhibit No. 13; is
18 that correct?

19     A    Yes.

20     Q    Between the time you received Mr. Robbins'
21 report on July 9, 2001 and the date of that letter, do
22 you recall what you did with respect to investigating
23 that claim?

24     A    Specifically no, I don't.

25     Q    Do you have any recollection of the action

1  you took in reaching the conclusions that are stated in
2  that letter?
3      A    Coupled with the report from the Walsh Claim
4  Services, Mr. Chapman, after consultation with the
5  underwriter and coverage counsel, it was decided to
6  file a notice of rescission and declination.
7      Q    Was there anything in particular in
8  Mr. Chapman's report from Walsh Claim Services that
9  gave you cause to decide to rescind and deny coverage?
10     A    The fact that it was now discovered that our
11 insured did not own the subject vessel, the fact that
12 there were misrepresentations made in the application
13 of coverage, it was decided to rescind and decline.
14     Q    You stated there were misrepresentations
15 made in the application.  Do you recall what you claim
16 were misrepresentations?
17     A    Mr. Perrotti did not own the vessel at the
18 time of the application or at the time of the claim.
19 The fact that -- well, those are the reasons.
20     Q    I show you Exhibit No. 2, Roberts 2, Bates
21 stamped CIC 11, to which is attached CIC 12 and 13.
22 These were documents produced in response to the
23 document production request in sequence.  I don't know
24 that they necessarily go together, and I don't want to
25 suggest that they intended to, but I show you CIC 11

```
 1  and ask if you can identify that?
 2       A    This is marked 2.
 3       Q    But the bottom number is a lawyering code.
 4            ATTORNEY CARBIN:  The witness is being
 5       shown what's marked Roberts Exhibit 2, which
 6       consists of Bates stamped 11.  I think
 7       that's what he's referring to.
 8       A    This one page?
 9       Q    Yes, sir.
10       A    And your question is?
11       Q    Can you identify that?
12       A    It's a yacht application.
13       Q    And is that the application you referred to
14  that has misrepresentations in it?
15       A    I believe so.
16       Q    And you indicated that in it Mr. Perrotti
17  stated that he was the owner of the vessel?
18       A    Yes.
19       Q    Where does it say that?
20       A    Says "name of applicant, Frank Perrotti,
21  Jr."
22       Q    It doesn't say "owner," does it?
23       A    No, it doesn't.
24       Q    You indicated that in your letter, your
25  declination letter, Exhibit 13, CIC 4 -- you can take a
```

53

# CERTIFICATE

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn, and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to typewriting under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither counsel nor attorney to either of the parties to said suit nor related to or employed by either counsel in said suit nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public this ___3___ day of *April* 20 *04*.

*Donna M. DeCiantis*
Notary Public

Connecticut License No. 00181
My commission expires:
November 30, 2004



# MEMO

## P&C Programs

**To:**       Al Chapman   Walsh Claim Services

**From:**   Don Roberts

**Date:**   05/31/2001

**Subject:**   Insured:   Frank Perrotti   Claim#:47-10300

---

I have just received notice of a Jones Act claim being made against the insured for injuries sustained by a crewman. Please interview the insured and determine:
How long he has owned the yacht
Does he have a permanent crew & captain
Where can we reach the captain
Is the claimant a member of his crew, how long
How about payroll
Did he hear of the injury and what does he know about it.
Where was the yacht going at the time of the injury.
What else can he tell us about this incident

If the captain is in the New England area, make arrangements to interview him as well.

Insured: Frank Perrotti  jr   Owner of M/Y NEWS
136 Bradlet Road
Woodbridge CT  06525
Tel: (203) 248-3886

D/A   April 8, 2000  yes ( 2000)

Claimant:
Johan Fourie

Slipped and hurt his knee in the engine room..



EXHIBIT
ROBERTS
9
3-31-04  DMD

CIC 00122



**ROYAL & SUNALLIANCE**

Specialty Programs
9 Farm Springs Road
Farmington CT 06032

Phone
860 674-6600
Fax
860 674-7341

REGISTERED MAIL- RETURN RECEIPT REQUESTED

Mr. Frank Perrotti, Jr.
136 Bradley Road
Woodbridge CT 06525

July 23, 2001

NOTICE OF RESCISSION AND DECLINATION

RE:
    M/Y M.E.W.S.
    Policy#:    YT607311
    Claimant:  Johann Fourie
    DOL:      August 6, 2000



EXHIBIT
ROBERT
13
3-31-04 DMD

Dear Mr. Perrotti:

We have now had the opportunity to investigate the claim submitted under the captioned policy in connection with the injury alleged to Johann Fourie. Based upon our investigation, we must inform you that we are unable to honor the claim and the Policy is hereby rescinded from inception based upon misrepresentations made in the application for the coverage, based on the lack of insurable interest by you in the vessel or the transfer of title to the vessel during the policy term, and based upon the breaches of the Policy conditions.

The Application submitted to secure the Policy indicates the applicant to be Frank Perrotti, Jr. The policy was issued to Frank Perrotti Jr. The Policy was issued to Frank Perrotti Jr as owner of the vessel. Policy General Condition I defines " INSURED" as the person or organization named on the declarations page. The insured named in the Declarations page and the Policy is " Frank Perrotti Jr. " consistent with the application. We are now advised that Mr. Perrotti either did not own the vessel at the time of the Application or at the time of the claim, he does not have an interest in the vessel that could be insured under the Policy, and the Policy is null and void.

Alternatively, if Mr. Perrotti transferred title to the vessel sometime after the Policy inception to the current owner, Clean Waste, Inc., the coverage became void. General Condition III of the policy reads:

CIC 000004

2.

      Transfer of Interest:
" This policy will be void if your yacht is sold, assigned, transferred or placed without our permission in writing"

The Connecticut Indemnity Company was neither requested to, nor granted permission for, Mr. Perrotti to transfer title to the vessel pursuant to General Conditions III the transfer to Clean Waste Inc following the inception of the Policy renders the Policy void.

In addition to Mr. Perrotti's lack of, or transfer of, interest in the vessel, we are also obligated to rescind based upon the misrepresentation of the vessel's ownership, homeport, and navigational area. The Application indicates Mr. Perrotti had the interest in the vessel which we now know to not be correct, that the vessel would be home ported in Rhode Island, and that the vessel was to operate in the United States Northeast coastal waters from Eastport Maine to Virginia Beach VA. We are now advised that the vessel is owned by Clean Waste Inc, is registered and managed in Georgetown Cayman Islands, and is regularly navigated in waters outside the navigation warranty.

Each of these items was a misrepresentation of the vessel's ownership and operation material to the insurer's consideration of the application. The policy is rescinded based upon each of these misrepresentations separately. Further, the underwriter would have applied different criteria as to the acceptability of the risk, pricing and/or policy wording. Given what we now know about the specifics of the risk, it is outside the authority of the underwriter to accept this risk and therefore the Application would have received an outright rejection.

The breach of the Policy's navigational limits upon which the Policy coverage was conditioned is an additional basis upon which the coverage is voided. The Policy restricted insured navigation to the United States Northeast Coastal waters from Eastport Maine to Virginia Beach VA. The vessel is home ported in Grand Cayman and operated in Caribbean waters, thereby violating the Policy condition as to navigation limits.

Given the rescission and avoidance of the policy, the claim submitted in connection with the injury alleged by Mr. Fourie is declined.

3

We are prepared to remit the premium under the Policy and request you to provide instructions as to how you wish the remittance to be made.

This letter is written entirely without prejudice to the Connecticut Indemnity Company's right under the terms and conditions of the policy or otherwise. Connecticut Indemnity Company reserves the opportunity to modify this position if or as different information is learned.

Sincerely,
The Connecticut Indemnity Company

Donald R. Roberts  SCLA
Claim Service Consultant

Cc
Dunlop Agency
8 Fairfield Blvd.
Wallingford CT 06492