**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CLEAN WASTE, INC., | : |
| | : |
| Plaintiff, | : |
| | : CASE NO. 3:02 CV 2105 (RNC) |
| v. | : |
| | : |
| THE CONNECTICUT INDEMNITY COMPANY, | : |
| FIRST NATIONS FINANCIAL SERVICES, INC., | : |
| THE DUNLAP CORPORATION F/D/B/A | : |
| DUNLAP INSURANCE & BONDING and/or | : |
| DUNLAP CT CORPORATION, BRUEN DELDIN | : |
| DIDIO ASSOCIATES, INC. and MARINE MGA, | : |
| INC., | : |
| | : |
| Defendants. | : |

**THE CONNECTICUT INDEMNITY COMPANY AND MARINE MGA, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF THE CASE**

Defendants Connecticut Indemnity Company ("CIC") and Marine MGA, Inc. ("MGA")
respectfully move for summary judgment dismissing the Complaint with prejudice and without
costs pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

Clean Waste cannot maintain this action -- it is not an insured under and has no rights
under the Marine Hull and Protection & Indemnity insurance contract (the "Policy") issued by
CIC/MGA.  It cannot be disputed that CIC and MGA never agreed to insure or intended to insure
Clean Waste.  In fact, it cannot be disputed that when CIC and MGA issued the Policy they had
never even heard of Clean Waste.  As this court previously ruled, the Policy unambiguously
identifies "Frank Perrotti" as the only insured.  Clean Waste's claim that it is entitled to benefits

under an insurance contract to which it is not a party fails as a matter of law.   Summary judgment should be granted in favor of CIC and MGA for this reason alone.

Alternatively, after arguing strenuously that Perrotti and Clean Waste are the same, Clean Waste is estopped from bringing an action separate from Perrotti and arguing they are now separate, and from relitigating the very same issues. This case embraces the very same transaction and nucleus of facts as  The Connecticut Indemnity Company v. Frank Perrotti, Jr., Civil Action No. 3:01 CV 1410 (RNC) (the "CIC Action") namely: the CIC Policy issued to Perrotti by CIC through MGA and coverage under the Policy for an underlying injury allegedly sustained by Johan Fourie.   In the CIC Action, Perrotti conveniently testified that he was "indistinguishable" from and was the "same" as Clean Waste.   During the trial Perrotti testified:

<blockquote>"I'm Clean Waste."</blockquote>

Now, when it is not so convenient, Mr. Perrotti wants his 100% owned and funded corporation to be treated separately.   Clean Waste and Perrotti cannot have it both ways.   Clean Waste is estopped from claiming it is "distinct" from Perrotti and from raising the very same issues and claims against CIC and MGA that the Court has already decided.

Further, even assuming Clean Waste can maintain this action – which it cannot – the Complaint should be dismissed against CIC and MGA because Clean Waste's proposed state-based claims and claims for negligence and reformation of the Policy are fundamentally flawed and have no basis under Federal Admiralty law.

## STATEMENT OF MATERIAL FACTS

### A.     BACKGROUND

Defendant Marine MGA, Inc. ("MGA") is a managing general agency in the business of underwriting marine insurance and is Managing General Agent for Defendant The Connecticut Indemnity Company ("CIC").   See Local Rule 56(a)(1) Statement of Facts ("SF") at ¶ 1.   MGA

is not licensed to transact insurance business outside the U.S.  SF at ¶2.  MGA's agency contract does not permit it to bind foreign owned, foreign registered or foreign based vessels on behalf of CIC.  SF at ¶3.  Plaintiff Clean Waste is a Grand Cayman Corporation solely owned by Frank Perrotti, Jr. ("Perrotti").   SF at ¶¶ 4,5.

In October of 1999, Perrotti purchased a 1986 121' Denison yacht /with his own funds and renamed it the N.E.W.S. (the "Vessel"). SF at ¶ 6.  Perrotti funded the maintenance and upgrading of the Vessel.  SF at ¶ 7.  The Vessel was registered and flagged in the Cayman Islands.  SF at ¶ 8.

## B.    THE APPLICATION

On or about October 19, 1999, Scott Hainey submitted a Yacht Application ("Application") to MGA for a Marine Hull and Protection and Indemnity insurance policy for the Vessel on behalf of Frank Perrotti. SF at ¶ 9.  Perrotti reviewed and signed the Application provided by Hainey and certified the information contained in the Application.  SF at ¶ 11.

The Application states that the name of the applicant is "Frank Perrotti, Jr." with an address at "136 Bradley Rd., Woodbridge, C.T. 06525."  SF at ¶ 12,  Ex. F.  The Application does not mention "Clean Waste, Inc." as the applicant or otherwise mention Clean Waste.  Id. When Hainey submitted the Application to MGA and CIC, Hainey did not know of Clean Waste and had never even heard of Clean Waste.  SF at ¶ 10.

## C.    THE POLICY

Based on the information contained in the Application, CIC issued Yacht Policy Number YT60731, to Frank Perrotti effective October 19, 1999 through October 19, 2000 (the "Policy"), covering certain maritime risks relating to, *inter alia*, the operation of the Vessel within the navigational limits between Maine and Virginia.  SF at ¶ 15.

The "named insured" listed on the Policy is "Frank Perrotti, Jr."   SF at ¶ 16, Ex. H.

Hainey testified a trial in the CIC action that when he submitted the application to MGA, he never heard of Clean Waste and never told MGA of Clean Waste nonetheless its Cayman Island's domicile or the vessel's registration in Cayman Islands. SF at ¶ 10.

MGA never heard of nonetheless agreed to insure Clean Waste.  SF at ¶¶ 17-18.  Had MGA known of Clean Waste, it would not have agreed to write the account.  SF at ¶ 19.

### D.     THE FOURIE CLAIM

After the Policy was issued, a claim was submitted under the Policy relative to an injury alleged by Johan Fourie sustained while aboard the Vessel. (the "Fourie Caim").  SF at ¶ 21.

### E.     THE CIC ACTION

CIC filed a Declaratory Judgment Complaint in this Court styled <u>The Connecticut Indemnity Company v. Frank Perrotti, Jr.</u>, Civil Action No., 3:02 CV 1410 (RNC)), seeking a recission of the Policy and a declaration that the Fourie claim was not covered. SF at ¶ 21.

On April 8, 2002, the Honorable Donna F. Martinez entered a Scheduling Order in the CIC Action, which, inter alia, provided:

> **Pleadings:** Any motion to amend the complaint or join parties will be filed by the plaintiff no later than July 8, 2002.  Any motion to **amend the answer or join parties will be filed by the defendant no later than July 8, 2002**.

SF at ¶22, Ex. J.

On or about April 15, 2002, Perrotti filed an Answer and Counterclaim.  SF at ¶ 23. Perrotti never amended its Answer or Counterclaim or moved to join additional defendants.  SF at ¶ 24.

The Counterclaim alleges CIC breached the Policy and seeks coverage under the Policy for the Fourie claim.  SF at ¶ 25.  The Counterclaim avers that Perrotti has an equitable interest and insurable interest in the Vessel because he is the sole owner of Clean Waste.  SF at ¶ 26.

On August 9, 2004, the CIC Action proceeded to a bench trial before the Honorable Robert N. Chatigny, Chief U.S.D.J.  SF at ¶ 27.  The case was tried on August 9 and August 10, 2004.  SF at ¶27.

Throughout the CIC Action, Perrotti argued that he was Clean Waste.  SF at ¶ 28. Perrotti testified he was the sole shareholder of Clean Waste and funded the purchase and maintenance and upgrading of the Vessel.  SF at ¶¶ 7, 29-31.

At trial, Perrotti argued he is "in fact" Clean Waste.  SF at ¶ 29.  At trial Perrotti testified:

> "I'm Clean Waste."

SF at ¶ 31.

On or about September 30, 2005, the Honorable Robert N. Chatigny issued a Ruling and Order.  SF at ¶ 32.  The Court held Perrotti was insured under the Policy.  SF at ¶ 34.  The Court found Perrotti's broker Hainey credibly testified that he never heard of Clean Waste and that neither MGA nor CIC could have heard of or known of Clean Waste.  SF at ¶ 35.

### F.   CLEAN WASTE ACTION

After missing the deadline set forth by the Court's Order in the CIC Action for additional parties or claims, Clean Waste filed this action against CIC and Marine MGA (the "Complaint"). SF at ¶¶ 36, 37.

Counts Four through Eleven of the Complaint make allegations against MGA or CIC.  SF at ¶¶ 38-39.  Each Count is premised on the same set of underlying facts, events and issues as in

the CIC Action. SF at ¶ 40.  Clean Waste's claim that CIC breached its obligation under the Policy by "rescinding the [] Policy and declining coverage for the Fourie claim" is identical to the claim alleged by Perrotti in his Counterclaim in the CIC Action that CIC breached the Policy by failing to defend Perrotti against the Fourie claim.   SF at ¶¶ 41-42.

In the Clean Waste Complaint, Clean Waste seeks to reform the Policy to show Clean Waste as the insured.  SF at ¶ 43.  In the CIC Action, the Court found Perrotti is the insured. SF at ¶ 45.

## ARGUMENT

## POINT I

## CIC AND MGA ARE ENTITLED TO SUMMARY JUDGMENT

Summary judgment is required "when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material facts and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Celotex Corp. v. Carrett, 477 U.S. 317 (1986).  In deciding a motion for summary judgment, the court's function is to determine whether any material issues of fact exist to be tried.  Kent v. United States, 343 F.2d 349 (2d Cir. 1965).

"[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted.  Celotex, 477 U.S. at 322-23.

Summary judgment is also an appropriate method for resolving a claim of collateral estoppel and res judicata. Tibbetts v. Stempel, 354 F.Supp.2d 137 (D. Conn. 2005); Woods v. Dunlop Tire Corp., 972 F.2d 36, 38-39 (2d Cir. 1992); Meshulam v. Gen. Motors Corp., 995 F.2d 192, 194 (11th Cir. 1993). "Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata." Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 712 (1993).

CIC and MGA's motion for summary judgment should be granted. First, it is undisputed that Clean Waste seeks coverage under an insurance contract that it is not privy to and has no rights under. Second, this action involves the exact set of underlying facts and arises out of the same transactions and events as the CIC Action for which this Court has already rendered a decision on the merits. Third, even if Clean Waste could maintain this action, which MGA and CIC deny, there is no evidence to establish even a prima facie case for negligence, bad faith and reformation.

## POINT II

## CLEAN WASTE CANNOT MAINTAIN THIS ACTION BECAUSE IT IS NOT PRIVY TO THE CIC INSURANCE POLICY

Clean Waste cannot maintain this action against CIC and MGA. Clean Waste is not a party to the Policy and has no rights under the Policy.

It is well settled that "one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . . ." Coburn v. Lenox Homes, Inc., 173 Conn. 567, 570 (1977); Tomlinson v. Bd. of Educ, 226 Conn. 704, 718 (1993). An action upon a contract or for breach of a contract can be brought and maintained only by one who is a party to the contract sued upon. Id.

A party cannot rightfully invoke the jurisdiction of the court unless it has some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.  Ganim v. Smith & Wesson Corp., 258 Conn. 313, 347 (2001).  "[W]hen standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [party] has a legally protected interest [that may be remedied]."  In re Jonathan M., 255 Conn. 208, 219 (2001) (citing Steeneck v. Univ. of Bridgeport, 235 Conn. 572, 579 (1995)).

Clean Waste is not a party to the Policy and has no standing to bring this Action.  The CIC Policy unambiguously names "Frank Perrotti" as the insured.  See Ex. H (CIC Policy.)  Nowhere does the Policy mention "Clean Waste."  Id.   It cannot be disputed that the Policy was not issued to Clean Waste.

The testimony reveals CIC and MGA never contemplated, agreed or intended to insure Clean Waste.  In fact, Perrotti's broker Hainey credibly testified at trial that he did not even know about Clean Waste when he sent the Application to MGA.  CIC and MGA had no knowledge of Clean Waste when the Policy was issued.  It cannot be disputed that CIC and MGA never agreed to insure Clean Waste, and that the authority held by MGA on behalf of CIC did not permit it to bind an offshore risk such as Clean Waste..

Moreover, assuming *arguendo*, MGA and CIC knew about Clean Waste, MGA *could not have* issued the Policy to Clean Waste.  Clean Waste is a Grand Cayman Corporation.  MGA cannot bind any foreign owned, foreign registered or foreign based vessels on behalf of CIC.  Further, MGA is not licensed to transact insurance business outside the U.S.

The uncontroverted facts and evidence reveal that Clean Waste is not an insured under the Policy and is not a party to the contract.  It cannot be disputed that CIC and MGA could not have even insured Clean Waste.  Clean Waste cannot maintain this action against CIC and MGA as a matter of law.

## POINT III

## CLEAN WASTE IS ESTOPPED FROM MAINTAINING THIS ACTION

In the alternative, Clean Waste is precluded from bringing a separate action from the CIC Action based on the doctrines of estoppel, collateral estoppel and res judicata.

### A.    Clean Waste is Estopped From Asserting Its Interests Are "Distinct" From Perrotti's

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." New Hampshire v. Maine, 532 U.S. 742, 749 (2001); Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 148 (2005).  Courts have consistently held that the application of judicial estoppel applies to "situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." Id. at 148 (citing Stichting v. Schreiber, 507 F.3d 34, 45 (2d Cir. 2005); see also ACC Bondholder Group v. Adelphia Communs. Corp., 2007 U.S. Dist. LEXIS 24694 (S.D.N.Y. Apr. 2, 2007) (upholding assertion of judicial estoppel).

In the CIC Action, Perrotti argued that his interests were identical to Clean Waste's.  In fact, at the trial, Perrotti testified he was the sole shareholder and officer of Clean Waste.  Perrotti testified: "I'm Clean Waste, Inc."    The Court held that Perrotti is insured under the Policy and entitled to recovery under the Policy for the Fourie claim.

Now, Clean Waste argues it is distinct from Perrotti and should also have the benefit of the Policy. This position is exactly the opposite and contrary to Perrotti's position in the CIC Action. Clean Waste is estopped from arguing that it is separate from Perrotti entitled to maintain this separate action on the same policy Perrotti has already recovered on.

**B.     Clean Waste is Collaterally Estopped From Asserting that It is a Named Insured Under the CIC Policy and is Entitled to Coverage For the Fourie Claim.**

The purpose of the doctrine of collateral estoppel is to prevent a party from relitigating an issue that has already been litigated and protects a defendant from the burden of litigating an issue that has been fully and fairly tried in a prior action. <u>Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 323 (1971). Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, prevents inconsistent decisions, encourages reliance on adjudication by minimizing the possibility of inconsistent decisions, and conserves judicial resources. <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>Montana v. United States</u>, 440 U.S. 147, 153-154 (1979); <u>Benjamin v. Traffic Executive Ass'n Eastern R.Rs.</u>, 869 F.2d 107, 110 (2d Cir. 1989). Courts have noted:

> Application of both [the] doctrines [of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

<u>Johnston v. Arbitrium (Cayman Islands) Handels AG</u>, 198 F.3d 342 (2d Cir. 1999) (citing <u>Montana</u>, 440 U.S. at 153-54 (1979)).

Collateral estoppel precludes a party from relitigating issues and facts *actually* and *necessarily* determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. <u>State v. Joyner</u>, 255 Conn. 477, 490 (2001). For collateral estoppel

to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding. Id.  Further, "[t]he [party seeking estoppel] has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Dowling v. Finley Assoc., Inc., 248 Conn. 364, 377, 727 A.2d 1245 (1999). Collateral estoppel may be invoked "between the same parties or those in privity with them." Joyner, 255 Conn. at 490; Aetna Cas. & Sur. Co. v. Jones, 220 Conn. 285, 296, 596 A.2d 414 (1991)

Clean Waste alleges CIC breached its obligations to Clean Waste under the Policy and seeks damages as a result of the alleged breach.  See Ex. C (Complaint) at ¶ 68-71.  Collateral estoppel precludes Clean Waste's claims.   The coverage issues in this lawsuit are identical to the issues litigated in the CIC Action concerning whether the Policy is enforceable and who the insured is.   In fact, the Seventh Count of the Complaint makes the very same allegations as Perrotti's Counterclaim in the CIC Action and alleges CIC's: "action in rescinding the subject policy and declining coverage for the Fourie claim constituted a breach of contract and its obligation to defend the Plaintiff against just claims and to respond to claims otherwise covered under the policy."  These coverage issues are identical to the issues raised, litigated, and decided by the Court in the CIC Action.

Indeed, to litigate these issues a second time would require the same exact discovery and testimony as the CIC Action.  Both parties to this action and the CIC Action were witnesses who testified at trial in the CIC Action and the same witnesses would be required to testify in this case.  Further, there is no question the CIC Action was actually and fully litigated for purposes of collateral estoppel and the issue of coverage under the Policy for the Fourie claim was necessary to support a valid and final judgment on the merits.

Last, collateral estoppel is being invoked here to bar the "same parties or their privies" from raising the issues that were raised in the CIC Action.  There is no question the party against whom estoppel is being asserted – Clean Waste – is in privity with the party in the prior litigation – Perrotti.  Perrotti testified that he is the sole shareholder, director and president of Clean Waste, that he is the "same" as Clean Waste and that he "is" Clean Waste.  Clean Waste is estopped from arguing otherwise.  The coverage issues raised in the CIC were decided by the court and must also apply to Clean Waste here.

Clean Waste is precluded from raising issues related to coverage for the Fourie claim and the named insured under the Policy.  Collateral estoppel applies to protect CIC and MGA Marine from the burden of litigating issues that have been fully and fairly tried and decided.

### C.    Clean Waste's Complaint is Barred by the Doctrine of Res Judicata.

It is well established the doctrine of res judicata provides "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  Once a final judgment has been entered on the merits of a case, that judgment bars any subsequent litigation by the same parties or those in privity with them concerning "the transaction, or series of connected transactions, out of which the [first] action arose."  See RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982); Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77, n. 1, (1984); Tibbetts v. Stempel, 354 F. Supp. 2d 137, 145 (D. Conn. 2005).  Res judicata "promotes judicial economy by preventing relitigation of issues or claims previously resolved."  Joe's Pizza, Inc. v. Aetna Life & Cas. Co., 236 Conn. 863, 872 (Conn. 1996).

A judgment rendered on the merits is an absolute bar to a subsequent action between the same parties or those in privity with them on any claim based on the same operative facts that

might have been made.  <u>Connecticut Nat'l Bank v. Rytman</u>, 241 Conn. 24 (Conn. 1997); <u>State v.</u>

<u>Ellis</u>, 197 Conn. 436 (Conn. 1985).   Res judicata bars cases that arise from the same "operative

nucleus of fact."  <u>Rytman</u>, 241 Conn. 24; <u>Cameron v. Church</u>, 253 F. Supp. 2d 611, 619

(S.D.N.Y. 2003) (<u>citing</u> <u>Olmstead v. Amoco Oil Co.</u>, 725 F.2d 627, 632 (11th Cir. 1984)).

Moreover, the doctrine applies "not only as to what was pleaded, but also as to what

could have been pleaded."  <u>Teltronics Serv., Inc. v. Hessen</u>, 762 F.2d 185, 193 (2d Cir. 1985).

"New legal theories do not amount to a new cause of action so as to defeat the application of the

principle of res judicata."  <u>Id.</u> at 193.  It is the identity of facts surrounding the occurrence which

constitutes the cause of action, not the legal theory upon which a party chooses to frame the

Complaint.  <u>Berlitz Sch. of Languages of Am. Inc. v. Everest House</u>, 619 F.2d 211, 215 (2d Cir.

1980) ("Whatever legal theory is advanced, when the factual predicate upon which claims are

based are substantially identical, the claims are deemed to be duplicative for purposes of res

judicata.  A "plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various

suits, based on different legal theories."  <u>Waldman</u>, 207 F.3d at 110-11; <u>Vega v. Lantz</u>,   No.

3:04cv1215, 2006 U.S. Dist. LEXIS 69120, *16 (D. Conn. Sept. 26 2006).  Res judicata will

apply even though the facts essential to the second suit are not the same as the fact essential to

the first suit.  <u>Id.</u>  The important consideration is that the facts essential to the second suit were

present in the first suit.  <u>Id.</u>

In this case, res judicata bars Clean Waste's claim because: (1) there was a former

judgment on the merits by a court of competent jurisdiction; (2) in a case involving the same

parties, or their privies; and (3) based on the same transaction and involving the same claims as

the earlier transaction or claims that could have been made in the prior action.   <u>Tibbetts</u>, 354 F.

Supp. 2d at 146.

First, it cannot be disputed that the Court's Ruling and Order and Judgment in the CIC Action was a final judgment on the merits by a court of competent jurisdiction.    "[A] judgment will ordinarily be considered final 'if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court." Tibbetts, 354 F. Supp. at 147 (citing Cadle Co. v. Drubner, 303 F. Supp. 2d 143, 147 (D. Conn. 2004) (quoting CFM v. Chowdhury, 239 Conn. 375 (1996)).  On September 30, 2005, the court rendered an opinion and judgment in favor or Perrotti dismissing CIC's complaint with prejudice and awarding Perrotti damages.  The court's decision was rendered after trial.  The decision ended the litigation on the merits and left the court with  nothing to do "but execute the judgment." Coopers & Lybrand v. Lievesay, 437 U.S. 463, 467 (1978). The judgment  indisputably constitutes a final judgment on the merits.

Second, this case involves the same parties or their privies as the CIC Action.  Courts have long held that res judicata applies to bar parties not named in the earlier action as long as the new parties have a "sufficiently close relationship" to the prior parties.  Tibbetts, 354 F. Supp. 2d at 148; Meagher v. Board of Tr. of Cement & Concrete Workers, 79 F.3d 256, 258 (2d Cir. 1996) (finding relationship between the prior defendant and the current defendant  was sufficiently close to warrant the application of res judicata).  The principle of privity "bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995) (citing Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 640 (2d Cir. 1987); see also Tibbetts, 354 F. Supp. 2d at 148.

Contemporary courts have broadly construed the concept of privity. <u>Tibbetts</u>, 354 F. Supp. at 148. Courts interpret privity to signify a relationship between one who is a party of record and another who is a nonparty, but is sufficiently close to mandate the application of res judicata. <u>Mazziotti v. Allstate Ins. Co.</u>, 240 Conn. 799, 813 (1997). "The concept of privity has moved away from the conventional and narrowly defined meaning of mutual or successive relationships to the same rights or property". <u>Id.</u> at 813. "Generally, an employer-employee or agent-principle relationship will provide the necessary privity for a claim preclusion with respect to matters within the scope of the relationship, no matter what party is sued first." <u>Tibbetts</u>, 354 F. Supp. 2d at 249 (citing 18 Moores Federal Practice 3d. § 131.40(3)(f) (Matthew Bender Edition).

Here, Clean Waste's relationship with Perrotti is sufficiently close to supply preclusion. <u>See</u> <u>Teltronics</u>, 762 F.2d at 190-91 (finding founder, president, chairman of the board, and substantial shareholder is in privity with corporation for purposes of res judicta). Perrotti testified in the CIC Action that: (1) he owns 100% of the shares in Clean Waste; (2) he is the sole president and director of Clean Waste; (3) he provided the funds to purchase the Yacht; and (4) that he is Clean Waste. Clean Waste is in privity with Perrotti and is estopped from asserting it is not.

Similarly, CIC and MGA's relationship is "sufficiently close" to supply preclusion. Marine MGA is the Managing General Agent for CIC. Marine MGA and CIC entered into an agency agreement providing that Marine MGA is the agent for CIC. CIC and MGA are clearly in privity.

Third, this action is based on the same transaction and involves the same claims as the CIC Action or claims that could have been made in the CIC Action. In determining whether an

action springs from the "same transaction" or "claim" as an earlier action, Connecticut courts

employ a transactional test as described in Section 24 of the Restatement (Second) of

Judgments:

> The claim [that is] extinguished includes all rights of the plaintiff
> to remedies against the defendant with respect to all or any part of
> the transaction, or series of connected transactions, out of which
> the action arose.

See RESTATEMENT (SECOND) OF JUDGMENTS at § 24(1); Tibbetts, 354 F. Supp. 2d at

149-150; Fink v. Golenbock, 238 Conn. 183, 191-92 (1996).    Under that test, courts "look to

whether the underlying facts are related in time, space, origin, or motivation, whether they form

a convenient trial unit, and whether their treatment as a unit conforms to the parties'

expectations...." Peia v. U.S., 152 F. Supp. 2d 226 (D. Conn. 2001) (citing Waldman v. Village

of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000)); Cameron, 253. F. Supp. 2d at 629 (citing

Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997)).

Each Cause of Action against CIC and Marine MGA arises out of the same transaction

and "nucleus of operative facts" as the CIC Action and could have been brought there.  The facts

essential to Perrotti/Clean Waste's claims in each proceeding are the same.  The facts essential to

Clean Waste's claims in this action were present in the CIC Action and Clean Waste could have

litigated its present claims there.  Indeed, both proceedings arise from Perrotti's purchase of the

Vessel and insurance for the Vessel.  Both proceedings concern the CIC Policy that was issued to

Frank Perrotti.  Both proceedings concern whether the Fourie claim is covered by the Policy.

Both proceedings concern whether CIC breached its obligation under the Policy by failing to

respond to the Fourie claim.  As this non-exhaustive list indicates, the facts in the CIC Action

and this case are inextricably connected.

Moreover, all parties were known to Perrotti at the time the first action was filed and Perrotti failed to join these parties. In fact, Clean Waste filed this action only after missing the Court's deadline in the CIC action for additional parties and claims. Cameron, 253 F. Supp. 2d at 623 (res judicata operates to preclude claims, rather than particular configurations of parties). The causes of action alleged in this case could have been asserted in the CIC Action but Perrotti failed to do so, and only filed this action after the missing the deadline.

The preclusive effect of the Court's Ruling and Order in the CIC Action should apply to protect defendants CIC and Marine MGA here. All prongs of the doctrine of res judicata are satisfied. Clean Waste's claims involve the same nucleus of operative facts and should have been raised in the CIC Action. The preclusive effect of the Court's Ruling cannot be avoided by asserting new legal theories that do not amount to a new cause of action.

## POINT IV

### CLEAN WASTE'S CLAIM FOR REFORMATION FAILS AS A MATTER OF LAW

Even if Clean Waste could maintain this action, which CIC and MGA deny, Clean Waste's claim for reformation fails.

There is simply no proof that CIC or MGA somehow intended to insure Clean Waste to warrant a reformation of the Policy. The evidence is that CIC and MGA never even heard of Clean Waste when the policy was applied for and issued.

It is well-settled that reformation of an insurance policy requires "mutual mistake". Greenwich Contracting Co., Inc. v. Bonwit Constr. Co. Inc., 156 Conn. 123, 126-27 (1968). Harlach v. Metro. Prop. & Liab. Ins. Co., 221 Conn. 185, 190-91 (1992). "Reformation is appropriate in cases of mutual mistake -- that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both

parties, the written instrument fails to express the real agreement or transaction." Id. at 190; see also Patalano v. Chabot, 139 Conn. 356 (Conn. 1952).

"A court in the exercise of its power to reform a contract must act with the utmost caution and can only grant the relief requested if the prayer for reformation is supported by convincing evidence." Greenwich., 156 Conn. at 126-27. A party seeking reformation must establish that both parties agreed to something different from what is expressed in writing "and the proof on this point should be clear so as to leave no room for doubt." Id. If the right to reformation is grounded solely on mistake, it is required that the mistake be mutual, and to prevail in such a case, it must appear that the writing, as reformed, will express what was understood and agreed to by both parties. Id.

There is no showing, nor can there be, that CIC and MGA intended to insure Clean Waste. Indeed, the undisputed facts show that CIC and MGA never agreed to insure Clean Waste and had not even heard of Clean Waste when the Policy was applied for or issued. The Court has already found Hainey's testimony that he did even know about Clean Waste when he forwarded the Application to MGA and CIC credible. It is undisputed CIC and MGA did not know about nonetheless agree to insure Clean Waste. There is no mistake by CIC and MGA.

Moreover, the undisputed facts show that MGA *could not have* and would not have insured Clean Waste, a Grand Cayman Corporation. The uncontroverted testimony of MGA underwriter John Sterling reveals that MGA's binding authority from CIC did not permit MGA to bind any foreign owned, foreign registered or foreign based vessels on behalf of CIC. Nor could CIC extend MGA such authority because CIC was not licensed to transact insurance business in the Cayman islands. CIC and MGA made no mistake in issuing the Policy to Frank Perrotti rather than Clean Waste.

The undisputed facts show CIC and MGA did not make a mistake in issuing the Policy to Perrotti.  Reformation of the Policy to name Clean Waste is not proper.  Count Eleven of the Complaint should be dismissed with prejudice.

## POINT V

### FEDERAL ADMIRALTY LAW PREEMPTS CLEAN WASTE'S CONNECTICUT STATE LAW CLAIMS

Even if Clean Waste could maintain this action, which CIC and MGA deny, Clean Waste's state-based bad faith claims are improper and must be dismissed.

Counts Five, Seven, Eight, Nine and Ten of the Complaint make allegations against MGA and CIC for violations of the Connecticut Unfair Trade Practices Act. Conn. Gen. Stat. 42-110  et seq. ("CUPTA") or Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-815 et seq. ("CUIPA").   Even assuming Clean Waste could prove these claims, which it cannot, Clean Waste's proposed claims based upon law of the State of Connecticut have no place in a federal action where, as here, the court is exercising federal admiralty jurisdiction and there is an established body of federal maritime law which already addresses the circumstances under which a claimant is entitled to attorneys fees and/or punitive damages.

Courts in this District and the Second Circuit have long held that marine insurance policies and the claims that arise directly from them are within Federal Admiralty jurisdiction. See Advani Enters. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998); Sirius Ins. Co. (UK) v. Collins, 16 F.3d 34, 36 (2d. Cir. 1994).   Admiralty suits are governed by federal maritime substantive and procedural law. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959). See also Youell v. Exxon Corp., 48 F.3d 105, 110 (2d Cir. 1995); Ionian Shipping Co. v. British Law Ins. Co., 426 F.2d 186 (2d Cir. 1970).   To the extent there is no federal maritime authority, marine insurance contracts are governed by state law.  Willburn Boat

Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313-14 (1995), Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 305-06 (2d Cir. 1987).

Federal maritime law governs this dispute.  Indeed, in the CIC Action the court already found federal maritime law governs.

The Second Circuit recognizes an established Federal Admiralty rule of law that prohibits bad faith/punitive damages and claims under CUTPA and CUIPA.  Clean Waste's Connecticut state law claims for CUTPA and CUIPA must be dismissed because they are preempted by Federal Admiralty law.  See Norwalk Cove Marina, Inc. v. S/V Odysseus, Emerald Lady, Inc., 2003 U.S. App. Lexis 10651 *1 (2d Cir. May 27, 2003).  To allow Clean Waste to assert causes of actions based upon state law purportedly entitling Clean Waste to attorney's fees and punitive damages would contravene, or at a minimum, disrupt the harmony of the established federal maritime rule of law governing the award of attorney's fees.  See Kenealy, supra. at 270.

In Norwalk, the Second Circuit dismissed the defendants' Connecticut state law counterclaims based on CUTPA and for punitive damages on the grounds that the counterclaims were preempted by Federal Admiralty law.  Id., citing Am. Nat'l Fire Ins. Co. v. Kenealy, 72 F.3d 264, 270-71 (2d Cir. 1995) (attorneys' fees); Ingersoll, 829 F.2d at 309 (same); cf. Miles v. Melrose, 882 F.2d 976, 989 (5th Cir. 1989) (punitive damages).  Norwalk and the cases cited compel dismissal of Clean Waste's CUPTA and CUIPTA claims (Counts Five and Seven through Ten) as a matter of law.

Connecticut's Unfair Trade Practices Act and Unfair Insurance Practices Act have no applicability in the context of a dispute under federal maritime law where, as here, there is an established body of federal maritime law setting forth the circumstances under which a claimant is entitled to an award of punitive damages or attorneys fees.

## POINT VI

## CLEAN WASTE'S CLAIMS FOR NEGLIGENCE AGAINST MGA AND CIC FAIL AS A MATTER OF LAW

Even if Clean Waste could maintain an action against MGA and CIC, its purported claims for negligence are unsupported based on the evidence and fail as a matter of law.

The Fourth Count of the Complaint alleges MGA is an "insurance agency and/or brokerage" with a "duty of care and diligence with respect to the proper and accurate application, placement, obtaining, issuing, maintenance and renewal of marine insurance." Ex. C at ¶68. The Sixth Count alleges CIC is responsible for the negligent acts and omissions of MGA. These Counts are misplaced and fundamentally flawed.

Under Connecticut law, an insurance broker is an *agent of the insured* in negotiating for an insurance policy, and owes a duty to exercise reasonable skill, care, and diligence in effecting insurance. Ursini v. Goldman, 118 Conn. 554 (Conn. 1934); see also Todd v. Malafronte, 3 Conn. App. 16, 22 (Conn. App. 1984).

MGA is not a broker. MGA is a managing general agency that underwrites insurance for a variety of different insurance companies under contract for special lines of insurance, including marine insurance. Ex. B (Sterling Testimony) at 144:18-21.

It is undisputed MGA acted as a managing general agent *for CIC* when binding the Perrotti policy. It is undisputed MGA was not an agent of Perrotti or even heard of Clean Waste to even possibly be its agent. MGA owes no duty to Clean Waste. The scope of CIC and MGA's responsibility is defined by the insurance contract. Clean Waste's assertion that MGA owes it a duty of care or due diligence as "an insurance agency and/or brokerage" is flawed and completely lacks evidence. Clean Waste cannot not satisfy its prima facie burden of negligence and consequently, the Fourth and Sixth Counts should be dismissed.

## CONCLUSION

Based on the foregoing, CIC and Marine MGA respectfully request that the Court grant CIC and MGA's Motion for Summary Judgment dismissing the claims against them without costs.

Dated: Newark, New Jersey
      July 2, 2007

                                   Respectfully submitted,

                         By:    _/s/ James W. Carbin _____
                                 James W. Carbin (CT13762)
                                 **DUANE MORRIS LLP**
                                 744 Broad Street, Suite 1200
                                 Newark, New Jersey 07102
                                 (973) 424-2000
                                 Attorneys for Defendants,
                                 Marine MGA, Inc. and